UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MICHAEL PAUL VAN METER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:11-CV-289-JD |
| | ) | |
| CLAIR RETEK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Michael Paul Van Meter filed a complaint against Defendants Clair Reteke (administrative assistant at the Miami Correctional Facility), Mark Sevier (Superintendent of the Miami Correctional Facility), Sally Stevenson (administrative assistant at the Miami Correctional Facility), and Charles Penfold (employee of the Indiana Department of Correction) in their individual and official capacities [DE 1]. Van Meter brings the case pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his Eighth and Fourteenth Amendment rights by not properly restoring jail time credit (22 days) and by not accounting for the extra day of incarceration incurred during each leap year included in his sentence (9 days), thereby resulting in his over-detention. *Id*.

Now before the Court is Defendants' motion for summary judgment [DE 25], notice of said motion to the *pro se* plaintiff [DE 26], and memorandum in support [DE 27], to which Van Meter responded [DE 28]. The facts of this case are largely uncontested. There is no dispute relative to the amount of jail time credit actually given at any particular time, but rather the dispute centers on the proper method of restoring lost

1

credit consistent with Defendants' policies, and whether one day of credit should be given whenever a leap year is served.

For the following reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

**Factual Background**

The Indiana Department of Correction (IDOC) has been including leap days in computing sentences and release dates since 1984, but the legal authority upon which this method of time calculation was initially based was not identified by Defendants [Short[1] Declaration, ¶ 4]. Under this method, a sentence starts on the sentencing date and the sentence is calculated by counting to the day prior to the anniversary date of the sentencing according to the length of the sentence [Short Declaration, ¶ 5].

Relative to this case, Van Meter was sentenced on April 20, 1992 to 36 years of imprisonment for burglary [Short Declaration, ¶ 6]. The effective start of the sentence was first adjusted for the number of days of jail time credit, which was 313 days of jail time credit for Van Meter, yielding an effective sentencing date of June 12, 1991 [Short Declaration, ¶ 7]. The IDOC computed Van Meter's sentence to total 13,149 days (365.25 days x 36 years, which includes the nine leap days occurring in 1996, 2000, 2004, 2008, 2012, 2016, 2020, 2024 and 2028) [Short Declaration, ¶ 6]. Thus, Van Meter had a projected date of release to parole of June 11, 2009 (with a maximum release date of June 11, 2027) [Short Declaration, ¶ 7]. Ultimately, Van Meter was released from

---

[1]During the relevant time frame, Randall L. Short has been the Supervisor of Offender Placement in the Classification Division of the IDOC and his duties include reviewing sentences and credit time when questions are raised [DE 27-1, Short Declaration, ¶¶ 1-3].

custody on August 24, 2009[2] [DE 1 at 2], and he was discharged from parole in the Summer of 2010 [DE 1 at 2; DE 22 at 1].

During the time that Van Meter was in the IDOC, he was deprived of credit time, had credit time previously lost restored to him, was demoted in time-earning class to earn credit time at a slower rate, was promoted in time-earning class and received credit time for completing certain educational and vocational programs− and each of these actions required a re-computation of his projected date of release [Short Declaration, ¶ 8]. At issue in this case are two instances, May 10, 2004 and July 24, 2006, where Van Meter had credit time restored after submitting a petition for the restoration of credit time that he was deprived [DE 1 at 3-4]. Van Meter contends that relative to the second petition, Defendants failed to restore the correct amount of credit days due in accordance with the Disciplinary Code for Adult Offenders, Administrative Procedure 02-04-101, effective January 1, 2004 (until 2010); however, Defendants deny the contention [DE 1 at 3-5; DE 22 at 2; DE 27 at 12-13; DE 27-7]. Van Meter believes that Defendants should not have recalculated his lost earned credit time (in between the granting of his two restoration petitions) when he received conduct reports resulting in disciplinary violations and the loss of earned credit time [DE 28; DE 28-1; DE 28-2]. In other words, Van Meter appears to be arguing that when his second petition was granted, the same number of days should have been restored as when the first petition was granted, because both calculations should have been based on the 'same' original amount of lost earned credit

---

[2]Van Meter contends that the nine leap years should have resulted in nine days credit to his sentence [DE 1; DE 28], despite the fact that he did not serve any prison term in the last five leap years noted.

time (that is, without considering the additional lost credit days resulting from the conduct reports). Thus, Van Meter asserts that on July 24, 2006, he should have been credited 134 days (or 25% of 530 days), not credited only 112 days. Van Meter also believes that he should have been given credit for leap years.

Van Meter specifically relies on the passage in Section VII(E)(8)(e) of the Disciplinary Code which states in relevant part: "Approval of the first [and second] petition[s] shall result in 25% of the original amount of the TOTAL lost earned credit time being restored" [DE 1; DE 27-7 at 27] (emphasis in original). However, this same passage also indicates that "[t]he maximum amount of credit time that can be restored is 75% of the credit time deprived for any eligible disciplinary action . . . [and] [c]redit time shall be restored based upon the <u>cumulative amount of eligible lost earned credit time</u> . . . [w]hen calculating the amount of earned credit time to be restored, staff shall <u>consider the total amount of ELIGIBLE earned credit time that has been deprived</u> and make calculations based upon that amount" DE 27-7 at 27-28] (emphasis added). Thus, when an offender is eligible for a restoration of credit time, <u>25% of the eligible credit time</u> is restored [Penfold[3] Declaration, ¶ 5] (emphasis added).

The number of restorable and unrestorable days is determined each time a credit time action is taken to deprive or restore credit time [Short Declaration ¶¶ 9, 10; Penfold Declaration, ¶¶ 10, 12, 16], but Van Meter argues that Defendants improperly added such

---

[3]Charles A. Penfold is employed by the IDOC, and during the relevant time he was the Final Reviewing Authority charged with managing the Disciplinary Code for Adult Offenders, including responding to complaints that restoration of credit time was not properly calculated, as he did with the complaints made by Van Meter [Penfold Declaration, ¶¶ 1-3].

4

an interpretation to the policy [DE 28; DE 28-1; DE 28-2]. Moreover, the purpose of distinguishing between "restorable" and "unrestorable" days is unclear, except that the number of restorable days establishes a cap on the number of days that are available for restoration out of the total lost earned credit time.

IDOC records confirm that as of May 10, 2004, Van Meter had been deprived of 530 days of previously earned credit time as a result of disciplinary actions taken against him, and therefore Van Meter had 130 unrestorable days and 400 days available to be restored [Short Declaration, ¶ 10; Penfold Declaration, ¶¶ 4, 11]. Thus, on May 10, 2004, when Van Meter's first petition for restoration was granted, he was eligible for and received restoration of 134 days of credit time (or 25% of the lost 530 days[4]), leaving 266 restorable days [DE 1 at 2-3; DE 22 at 2; Penfold Declaration, ¶¶ 6, 12]. Thus, after May 10, 2004, Van Meter had 396 days of deprived credit time [Penfold Declaration, ¶ 6].

On May 12, 2005, Van Meter was deprived of 30 days of previously earned credit time as the result of a disciplinary violation, with 7 of these days being unrestorable and 23 days added to the possible days to be restored, which raised the available restorable days to 289 [Penfold Declaration, ¶¶ 7, 13]. What is not stated in Defendants' submissions, is the fact that this resulted in Van Meter's having a cumulative amount of 426 days deprived credit time.

On May 24, 2005, Van Meter was deprived of 60 days of previously earned credit time as the result of a disciplinary violation, with 15 of these days being unrestorable and 45 days added to the possible days to be restored, which raised the available restorable

---

[4]Admittedly, this number also represents 33% of the restorable days, the relevancy of which will become apparent shortly.

days to 334 [Penfold Declaration, ¶¶ 8, 14]. Again, what is not stated in Defendants' submissions, is the fact that this resulted in Van Meter's having a running total of 486 days deprived credit time.

In July 2006, Van Meter filed a second petition for the restoration of lost credit which was granted. Defendants assert that as of July 24, 2006, Van Meter was eligible for and received restoration of 112 days, which is 33% of the remaining restorable days as of that date [Penfold Declaration, ¶¶ 9, 15]. However, Defendants do not specify a policy provision which indicates that credit is calculated by providing "33% of restorable days."

Rather, as previously indicated, Defendants and Van Meter agree that when an offender is eligible for a restoration of credit time, 25% of the eligible lost earned credit time is restored. If this is the case, then as of July 24, 2006, wouldn't Van Meter have a total of 486 days of deprived credit time, 25% of which is 122 days, not 112 days?

And because Van Meter had at least 334 days available that were restorable[5] (per Defendants), it is unclear why Van Meter did not receive 122 days jail time credit.

Van Meter contends that each Defendant was individually responsible for the mistake− a contention that Defendants dispute without offering admissible evidence to support their contention [DE 27 at n. 1, 2]. Van Meter specifically avers that all of the Defendants were made aware of Van Meter's complaint that his jail time credit was not

---

[5]To the extent Defendants imply that "eligible" means "restorable," this still would not explain why 33% of the restorable days were credited, rather than 25%, in accordance with the Defendants' policy.

properly calculated, yet they each refused to address the deficiency [DE 1 at 2-3; DE 28-2].

In moving for summary judgment Defendants raise three limited issues for the Court's consideration: (1) Defendants contend that no constitutional violation is possible because Van Meter's jail time credit was properly calculated; (2) Defendants cannot be sued for damages in their official capacities; and (3) Van Meter lacks standing to seek injunctive relief because he has been discharged from jail [DE 27]. Van Meter responds by addressing only the first issue, arguing that Defendants incorrectly calculated his jail time credit by not calculating credit in accordance with the Disciplinary Code and by not providing one day of credit for each leap year [DE 28; DE 28-1; DE 28-2].

## **Standard of Review**

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Kerri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Summary judgment is not a tool to decide legitimately contested issues, and it may not be granted unless no reasonable jury could decide in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence

which "demonstrate[s] the absence of [a] genuine issue of material fact." *Id.* at 323. Once the moving party meets this burden, the nonmoving party may not rest on allegations or denials in its own pleading, but must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). The disputed facts must be *material*, which means that they "might affect the outcome of the suit under the governing law." *Brown v. City of Lafayette*, No. 4:08-CV-69, 2010 WL 1570805, at *2 (N.D. Ind. Apr. 16, 2010).

## **Analysis**

Defendants first argue that no constitutional violation is possible because Van Meter's jail time credit was properly calculated. But the facts stated above speak for themselves. That is, on July 24, 2006, Defendants contend that Van Meter was eligible for and received restoration of 112 days, which was 33% of his remaining restorable days; however, the policy upon which they rely indicates that when an offender is eligible for a restoration of credit time, 25% of the eligible credit time is restored. Thus, this case is unlike *Wallace v. Greer*, 821 F.2d 1274 (7th Cir. 1987) where the Seventh Circuit affirmed the granting of summary judgment on the former prisoner's § 1983 claim for unlawful incarceration, where the undisputed facts contained in the record revealed that the plaintiff was not unlawfully incarcerated past the expiration of his sentence. Further, while the Court is aware of the fact that much deference is generally afforded to prison authorities' calculation of good time credits, at least in the federal prison context, *see Hornsby v. Miller*, 725 F.2d 1132 (7th Cir. 1984), such discretion to determine the amount of good time credit available was limited to situations where the computation was

8

not inconsistent with the applicable statute and there was no evidence of abuse of discretion. On the record before it, the Court is unable to conclude that Defendants have demonstrated the lack of a genuine dispute relative to the proper calculation of Van Meter's restored jail time credit in accordance with its policies and procedures.[6]

The Court would also note Van Meter's concern that he should have been given 134 days credit for his July 24, 2006 restoration, because 134 days represents 25% of his original lost credit (of 530 days). In essence, Van Meter believes that the Defendants should not have recalculated his credit time when he received the conduct violations and lost jail time credit. However, Van Meter's position fails to account for the fact that credit time is restored based upon the *cumulative* amount of eligible lost earned credit time. Therefore, it would make no sense not to account for his additional lost earned credit time resulting from the conduct reports. Moreover, Van Meter previously received 134 days of restored credit on May 10, 2004, which could no longer be considered lost earned credit. So the argument that Defendants incorrectly recalculated Van Meter's credit, each time he received a disciplinary action, is without merit. In any event, the Court still questions why Van Meter did not receive 122 days restoration on July 24, 2006, given the policy to restore 25% of eligible lost earned credit time. Maybe there is a

---

[6]Other former prisoners have successfully defended against the granting of summary judgment on a § 1983 lawsuit alleging unlawful incarceration. *See e.g., Steele v. Wynn*, No. 1:10-cv-556-SEB-TAB, 2012 WL 4481815 (S.D. Ind. Sept. 28, 2012) (denying summary judgment and holding that a reasonable jury could find an Eighth Amendment violation where the defendants had knowledge of the plaintiff's incorrectly calculated release date and their failure to act may have caused the plaintiff's unjustified excess detention).

way to properly apply the policies and determine that it was appropriate to restore 112 days on July 24, 2006, but Defendants have not yet demonstrated that this is the case.

Relative to Van Meter's contention that one day of credit should be provided for each leap year he was imprisoned, Defendants indicate that this has been the procedure since 1984 when the then-Director of Classification established the method of calculation to include leap years. While this policy does not appear to be part of the Disciplinary Code, Defendants provide persuasive authority for their position based on the dictionary definition of "year" and based on civil cases indicating that a year is understood to include leap days [DE 27 at 8-12]. *See e.g., United States v. Marcello*, 212 F.3d 1005, 1009-10 (7th Cir. 2000) ("[b]oth the calendar-year and the anniversary method are reasonable-what matters is establishing an unequivocal rule that lets litigants know where they stand and spares judges from becoming enmeshed in such nitpicking in the future . . . [thus,] we adopt the anniversary rule . . . [t]he anniversary date will be the last day to file even when the intervening period includes the extra leap year day"); *Yokley v. Belaski*, 982 F.2d 423 (10th Cir. 1992) (holding that for sentencing purposes the term "year" refers to calendar year and petitioner's incarceration for a term that included three leap days did not violate due process or equal protection).

The only Indiana cases the Court located addressing this issue are unpublished dispositions which accounted for leap years within the sentence. *See McFarland v. State*, 923 N.E.2d 1003 (Ind. Ct. App. Mar. 11, 2010) (table) (forty-five year sentence calculated at 365.25 days per year to account for leap years); *Holt v. State*, 915 N.E.2d 1048 (Ind. Ct. App. 2009) (table) (fifty year sentence calculated to include leap years). In

fact, both of these cases relied on *Neff v. State*, 888 N.E.2d 1249 (Ind. 2008). And while Van Meter believes that Neff did not serve extra days for leap years, he is incorrect because Neff's prison records show that his sentence of twenty years was calculated to include leap years (365.25 days x 20 years = 7,305 days) [DE 27-1 ¶¶ 12-15, DE 27-4; DE 27-5]. Thus, Van Meter's reliance on *Neff* is misguided.

While there is limited case law on the issue, the Defendants have sufficiently demonstrated that Indiana courts have acknowledged that the IDOC properly accounts for leap years in calculating sentences. As a result, the Court finds that Defendants are entitled to judgment as a matter of law on Van Meter's claim that his jail time was miscalculated by the inclusion of leap year days resulting in four additional days of imprisonment.

However, because the Court concludes that on the present record disputed issues exist relative to the proper calculation of Van Meter's restored jail time credit (when his second petition was granted), Defendants are not entitled to judgment as a matter of law on this basis. Should Defendants wish to provide further evidence on this issue, then the Court could reconsider the argument.

Defendants' second argument is that they cannot be sued for damages in their official capacities and their third argument is that Van Meter lacks standing to seek injunctive relief because he has been discharged from jail. The Court agrees.

Van Meter's prayers for injunctive relief are moot because this is not a class action and he is no longer an inmate in the custody of the IDOC. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir.

2009)); *Olson v. Brown*, 594 F.3d 577 (7th Cir. 2010). Van Meter has not shown a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains here. In fact, Van Meter does not even live in Indiana at this time [DE 1 at 2]. As such, "[a]ny relief that [the court's] judgment might permit would be purely speculative in nature." *See id*.

Further, Defendants are immune from suit under § 1983 for monetary damages in their official capacities. *See Maddox*, 655 F.3d 709, 716 (citing *Brown v. Budz*, 398 F.3d 904, 917-18 (7th Cir. 2005) ("To the extent [the plaintiff] seeks monetary damages from defendants acting in their official capacity, those claims . . . are dismissed as they are barred by the Eleventh Amendment.")). And Van Meter has not shown that any exception to the Eleventh Amendment's bar applies here. *See e.g., Ind. Prot. and Advocacy Servs. v. Ind. Family and Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010) (noting that a state may waive immunity by consenting to suit in federal court, Congress may abrogate the state's immunity through a valid exercise of its powers under recognized constitutional authority, and under *Ex parte Young,* 209 U.S. 123, 159-60 (1908), a plaintiff may file "suit[ ] against state officials seeking prospective equitable relief for ongoing violations of federal law . . .") (citations omitted).

Defendants however remain subject to suit in their individual capacities given that Van Meter sufficiently contends in his declaration that each Defendant was individually responsible for knowingly refusing to correct the error in his jail time credit calculation. *See e.g., Steele*, 2012 WL 4481815 at *5 (noting that while defendants assert they had no knowledge of or personal involvement in the handling of plaintiff's credit time, the

12

plaintiff offered sufficient evidence (his own testimony) that the defendants were personally involved by stating he sent defendants letters asking them to intervene and help plaintiff obtain the credit to which he was entitled). While Van Meter's argument is not very strong, the Court will not grant summary judgment on this basis because not only did Defendants' footnotes hardly put Van Meter on notice of the issue, but the Court has insuffient information concerning the individual responsibility and authority of each Defendant relative to the calculation of Van Meter's jail time.

Defendants have not moved for summary judgment on any other grounds,[7] and as a result the Court's holding is limited to the issues raised on the present record.

## **Conclusion**

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' motion for summary judgment [DE 25].

SO ORDERED.

ENTERED:  March 21, 2013

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[7] For instance, Defendants do not address whether it is undisputed that the process afforded Van Meter satisfied the minimum requirements of due process with regard to his protected liberty interest in earned credit time.