UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| MICHAEL PAUL VAN METER, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Cause No. 3:11-CV-289 JD |
| CLAIR RETEKE, *et al.*, | ) |  |
| Defendants. | ) |  |

## **OPINION AND ORDER**

After serving a term of imprisonment in the Indiana Department of Correction, Plaintiff Michael Paul Van Meter brought this case pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth and Fourteenth Amendment rights by detaining him for 31 days too long. Van Meter bases this claim on two alleged miscalculations of his sentence: one relating to how the calculation accounts for leap years, and the other relating to how many days of credit against his sentence he was entitled to have restored after having lost them for disciplinary violations. Van Meter named four employees of the Indiana Department of Correction as defendants in their individual and official capacities, and sought monetary damages and injunctive relief.

On a previous motion for summary judgment, the Court dismissed all of Van Meter's claims except for his claim for monetary damages against the Defendants in their individual capacities based on the calculation of his lost credit time. [DE 30]. The Defendants now request summary judgment on this remaining issue, [DE 33] arguing that no genuine issue of material fact exists with respect to whether Van Meter's sentence was calculated correctly. Defendants served Van Meter, a *pro se* plaintiff, with an appropriate notice of the motion against him, [DE

1

35] but he has not responded. For the reasons that follow, Defendants' second Motion for Summary Judgment [DE 33] is GRANTED.

## II. BACKGROUND

This dispute centers around the correct method for computing the number of previously-deprived days of credit against an offender's sentence that must be given back to the offender once he meets the prison's criteria for re-earning lost credit. Offenders in the Indiana Department of Correction (the "Department") can earn credit against their sentences while incarcerated, but those credits can also be lost for disciplinary violations. [DE 27-7 p. 26–27]. This lost credit time can be restored in certain circumstances, however, pursuant to the Disciplinary Code for Adult Offenders (the "Code"). [*Id.*] Unless the credit was lost for a violation of a federal, state, or local criminal law, or for a battery with a weapon or inflicting serious injury, it is eligible to be restored. [*Id.*] Once an offender meets certain conditions, including maintaining a clear conduct record for a period of one year, the offender may file a petition for restoration of the lost credit time. [*Id.*] The method of calculating the amount of time to be restored, as spelled-out in the Code, is as follows:

> e. If the petition for restoration of earned credit time that has been deprived as a result of a disciplinary hearing is approved, the earned credit time shall be restored in the following manner:
>
> (1) Approval of the first petition shall result in 25% of the original amount of the TOTAL lost earned credit time being restored;
>
> (2) Approval of the second petition shall result in 25% of the original amount of the TOTAL lost earned credit time being restored; and,
>
> (3) Approval of the third petition shall result in 25% of the original amount of the TOTAL lost earned credit time being restored.
>
> (4) The maximum amount of credit time that can be restored is 75% of the credit time deprived for any eligible disciplinary action.

>       (5)     Credit time shall be restored based upon the cumulative amount of eligible lost earned credit time.

[*Id.* p. 27].

Van Meter was imprisoned in Indiana from 1992 to 2009 [DE 1 at 2]. During that time, he earned credit against his sentence, but also had portions of that credit revoked on several occasions. [Ex. 27-6]. On December 20, 1999, Van Meter was deprived of 160 days of credit as a result of a disciplinary violation, which raised his cumulative total of lost credit time to 530 days. [*Id.* p. 5]. On May 10, 2004, however, he applied for and received his first restoration of lost credit time. [*Id.*] In accordance with the Code, 25% of Van Meter's total eligible lost credit time, or 134 days, was restored.[1] [*Id.*] Van Meter had additional amounts of credit time deprived subsequent to that first restoration, however. On May 12, 2005, Van Meter had 30 days of credit time deprived, along with another 60 days on May 24, 2005. [*Id.*] This brought his total to 620 days of credit time had been deprived, while 134 of those had already been restored. [*Id.*]

On July 24, 2006, having maintained a clear conduct record for over a year since his last disciplinary action, Van Meter again applied for and received a restoration of lost credit time. [*Id.*] The calculation of this restoration is the source of the dispute in this matter. Had Van Meter not lost any additional credit time after his first restoration, he would have had two restorations remaining, each of which would have been for 133 days (25% of his 530 total lost earned credit time). Upon losing additional amounts of credit time after his first restoration, though, the Department started the restoration process over. Thus, they calculated that he had a total amount of "restorable" credit time of 334 days (620 total days lost, multiplied by the 75% cap on

---

[1] Of course, 25% of 530 is 132.5, not 134. The difference comes from the Department's practice of calculating the number of restorable lost credit days (up to 75% of the credit time deprived for any eligible disciplinary action) separately for each disciplinary action, rather than in the aggregate, and rounding in the offender's favor each time.

3

restorable credit time, less 134 days already restored[2]), which could be restored in three equal installments. Van Meter thus had 112 days of his lost credit time restored through his July 24, 2006 petition.

Van Meter takes issue with this approach, arguing that regardless of his subsequent deprivations of credit time, his second restoration should still have been "25% of the original amount of the TOTAL lost earned credit time." [*See* DE 27-7 p. 27]. He argues that the Code does not permit the Department to start the restoration process over after subsequent deprivations of credit time, and that he should have had 134 days of credit time restored at this point, not just 112. Accordingly, he claims that he was detained for 22 too many days.[3]

## II. STANDARD OF REVIEW

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). A material fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists with respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. On the other hand, where a factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party,

---

[2] Again, with some margin for rounding error in the offender's favor.

[3] The Court notes that Van Meter remained incarcerated for over three years after his 2006 restoration. Because petitions for restoration of lost earned credit time can be filed every 12 months, Van Meter could have had the remainder of his restorable lost credit time reinstated through subsequent restorations, which would make the amount calculated in this particular restoration immaterial. The record is silent, however, as to whether Van Meter maintained his eligibility and actually petitioned for any further restorations.

there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party, as well as draw all reasonable and justifiable inferences in his favor. *Anderson*, 477 U.S. at 255; *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). Still, the non-moving party cannot simply rest on the allegations or denials contained in its pleadings. It must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Furthermore, the non-moving party may rely only on admissible evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009).

### III.  ANALYSIS

Van Meter's claims under the Eighth and Fourteenth Amendments are premised on the allegation that he was detained for too long, so Defendants will be entitled to summary judgment if they can demonstrate that his sentence was calculated correctly in accordance with the Department's policies. It is undisputed here that the Code creates a liberty interest in the restoration of lost credit time by making the restoration "automatic" once an offender meets the eligibility criteria. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 462 (1989); *Hornsby v. Miller*, 725 F.2d 1132, 1135 (7th Cir. 1984). However, the Department is entitled to substantial deference in its interpretation of its own policies, so its calculations of Van Meter's sentence will not be overturned unless they are inconsistent with the Code or constitute an abuse of discretion. *Hornsby*, 725 F.2d at 1135 (noting that courts "are hesitant . . . to restrict prison authorities in the computation of when good time is 'earned' unless there is an abuse of discretion"); *Rasco v. Beeler*, 732 F. Supp. 75, 77 (N.D. Ill. 1990) ("In the absence of any

5

evidence indicating that this interpretation is unreasonable, the [Federal Bureau of Prisons']
construction of its own policy statement is entitled to deference.").

As the Court held in its previous order, Van Meter's argument that the restoration process should not start over when an offender accumulates additional deprived credit time is without merit. Granted, the policy is not worded so as to expressly account for this scenario, which creates a fair amount of ambiguity. However, the Code states that "[c]redit time shall be restored based upon the *cumulative* amount of eligible lost earned credit time," which cuts against Van Meter's argument that the calculation should not account for his subsequent deprivations. [DE 27-7, p. 27 (emphasis added)]. Similarly, the restorations are calculated as 25% of the "*TOTAL* lost earned credit time," rather than 25% of *each deprivation*, so it is not inconsistent with the language of the Code to start the process over after subsequent deprivations to account for the total cumulative amount of eligible lost earned credit time. Further, Van Meter's interpretation would lead to anomalous results, as any credit time deprived after an offender's first restoration would be lost in whole unless the process started over to allow them to restore those credits. Though this interpretation would have benefitted Van Meter as to the calculation of this restoration, it would have denied him the opportunity to restore any of the 90 days of credit time that he lost in May 2005 after his first restoration, and it could create unduly harsh results in many other circumstances. Thus, the Court cannot conclude that the Department's interpretation is inconsistent with the Code, so its interpretation will not be overturned on that basis.

That leaves the matter of properly calculating how much credit time should have been restored through Van Meter's July 24, 2006 petition. The Code states that each of an offender's three petitions for restoration "shall result in 25% of the original amount of the TOTAL lost earned credit time being restored," and that "[t]he maximum amount of credit time that can be

restored is 75% of the credit time deprived for any eligible disciplinary action." [DE 27-7 p. 27]. Thus, Van Meter's first petition resulted in a restoration of 134 days of lost credit time (25% of his 530 days of total lost earned credit time), and had he not accumulated additional lost credit time before his second petition, he would have received an additional 133 days through that restoration. However, once he was deprived of the additional 90 days of earned credit time, the restoration process started over, which complicates matters. Because Van Meter already had 134 days restored, the calculation for his second petition could not be based simply on the total amount of credit time deprived (620 days), as that would result in the time restored through the first petition being restored twice. Further, as the Court noted in its previous order, simply subtracting the restored time from the total amount of deprived credit time would not produce the same result as the Department's calculation either. (620 days of total deprived credit time, minus 134 days already restored, equals 486 lost days, but 25% of 486 is 122, not the 112 days that Van Meter received through his second petition.)

In their second motion for summary judgment, Defendants have plainly and thoroughly explained the Department's practices for calculating the amount of time to be restored, and it is clear from those explanations that the calculation of Van Meter's restorable credit time was consistent with its practices. In short, the Department keeps a running total of an offender's "restorable" lost credit time, which is 75% of the time deprived from each disciplinary action, rounded up each time. When an offender petitions for restoration of lost credit time, the Department splits that running total of restorable time into three equal parts, to be restored through three separate petitions. When an offender is deprived of additional credit time after a restoration, the Department adds the restorable portion of the credit time lost through that

deprivation to the balance of restorable credit time. The Department then divides that new total into three new equal parts, which can be restored through three additional petitions.

Applying this method to Van Meter's calculation, his total restorable credit time as of his first petition was 400 days, or 75% of his first 530 days of lost credit time. Upon his first petition, the 400 days were split into three parts, which resulted in 134 days being restored and 266 restorable days remaining. When Van Meter was deprived of an additional 90 days in May 2005, 68 restorable days (75% of 90 days) were added to his balance of restorable credit time, bringing him to 334 restorable days. When he petitioned for restoration in 2006, that total was split into three parts, and 112 days were restored.

The Department's explanation of this practice is also supported by a textual basis. While the Code requires the restoration to be 25% of the total lost earned credit time, Defendants' explanation does not readily account for how to arrive at the number that 112 is 25% of, or 448. The Court believes, however, that the textual basis for this calculation lies in the term "*eligible* lost earned credit time," which the Code requires the calculation to be based on. [DE 27-7 p. 27 (emphasis added)]. There are a number of factors that determine whether lost credit time is eligible for restoration. Credit time that is deprived for committing a crime, for example, is not eligible for restoration, and is never added to the pool of eligible lost earned credit time. Second, lost credit time that has already been restored is no longer eligible for restoration, and is therefore subtracted from the pool of eligible lost earned credit time. There is a third category of credit time that is excluded from this category as well: the Code states that the "maximum amount of credit time that can be restored is 75% of the credit time deprived for any eligible disciplinary action," so once 75% of the days deprived for a given disciplinary action have been restored, the remaining 25% become ineligible for restoration. [DE 27-7 p. 27]. For example,

8

Van Meter's first eligible disciplinary action resulted in a deprivation of 30 days. Though all of those 30 days went into the pool of eligible lost earned credit time, once the first 23 were restored, the remaining 7 became ineligible. In other words, for every three days of lost credit time that are restored, one day of lost credit time becomes ineligible for restoration as well.

Calculating Van Meter's restorable credit time based on this framework, Van Meter had 530 days of lost earned credit time at the time of his first petition. Of those, 134 were restored, making them no longer eligible for restoration. Further, 44 additional days (134 divided by 3) became ineligible through that restoration due to the 75% cap. Thus, after the first petition, Van Meter's cumulative total of eligible lost earned credit time was 352 days (530 minus 134 minus 44). Van Meter then lost an additional 90 days, all of which were added to the pool of eligible lost earned credit time, bringing him to 442 days at the time of his second petition. When Van Meter's second petition was approved, 25% of his 442 days of eligible lost earned credit time was restored: 112 days.[4]

Based on the Department's thorough explanation of its calculations and this textual basis for its result, the Court cannot conclude that the Department's calculations were inconsistent with its policies or that they constituted an abuse of discretion. Therefore, there is no dispute as to the fact that Van Meter was detained for the appropriate amount of time, meaning that the Defendants did not violate his liberty interests. With no constitutional violation upon which Van Meter can base his claims, Defendants' motion for summary judgment must be GRANTED.

## IV. CONCLUSION

Defendants' second motion for summary judgment [DE 33] is GRANTED. Because this resolves all remaining issues in this action, the Clerk is DIRECTED to enter final judgment in favor of the Defendants.

---

[4] Again, this reflects a rounding margin in Van Meter's favor, as 25% of 442 is actually 110.5.

SO ORDERED:

ENTERED: February 12, 2014

                                                  /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court